409-0546. Council, please. Please support. My name is Marty Spiegel and I represent the employer Dyno Nobel. This is our appeal of the Commission's decision finding that Mr. Gortney sustained accidental injuries arising out of and in the course of his employment, but the date of accident was March 8, 2007 and that he also gave notice on that date. For purposes of this argument, I'm going to confine myself to the issue of notice and our belief that the finding that notice was given on March 8, 2007 was against the manifest weight of the evidence. Looking briefly at some of the pertinent facts in this case, Mr. Gortney had been an employee of Dyno Nobel for a number of years, but in the year prior to the date of accident and had served as a truck driver, he began to develop problems with his upper extremity, so he decided to go to his family physician, Dr. Rosario. He saw Dr. Rosario on February 28, 2007, at which time Dr. Rosario indicated that he needed a referral to an orthopedic surgeon, so he gave him a slip referring him to Dr. Dar Lutz. The claimant took that slip to, I believe it was Gary at the employer, to show him that he had a referral to Dr. Lutz. He went to see Dr. Lutz on March 8, 2007, who ordered an EMG. He gave the slip to work and gave it to Tom and Gary, told them, I have carpal tunnel syndrome. Dr. Lutz has ordered an EMG. He did not discuss why he thought he had carpal tunnel syndrome. He did not tell them he believed it was related to work. There was no further discussions. An accident report was filled out with the employer on May 1, 2007, and I would like to call it to the judge's attention that during the course of the MITROS examination of Mr. Gortney at trial, I showed him this accident report. I referred to it as Respondent's Exhibit No. 5. It was actually Respondent's Exhibit No. 4. Respondent's Exhibit 5 was the newspaper article. And I believe counsel is in agreement with this. There's a list of the exhibits. I just had a misstatement in any event. So you're not taking issue with the fact that he related to the supervisors that he had carpal tunnel syndrome. You're making a more narrow or subtle point that he didn't specifically indicate it was a result of work activities. Is that sort of what you're saying? That's absolutely correct. And the authority for that being insufficient is what? Do you have a case? Yes. This court's decision in White v. Workers' Compensation Commission. Notice of a condition is not the same thing as notice of an industrial injury. He told them he had a condition. He doesn't mention it's related to work at that point. It's his burden of proof to prove by credible evidence all aspects of this case including notice. You're not going to overturn it unless that decision about notice of the condition is against the manifest weight of the evidence. In other words, an opposite conclusion is readily apparent. Section 6C requires notice to be given as soon as practicable but not more than 45 days after the accident. We have to assume the legislature put the 45 day limit in there for a reason. So what's the date of notice in this case? Was it February 28, 2007 when he saw Dr. Rosario for the first time? I don't think so because the date of accident was March 8, 2007. He gave a slip to his employer, told them about a diagnosis, told them about the EMG. He did not tell them that was work related. In fact, the claimant has indicated in his brief on page 15 he never used the phrase caused by work. The employer should have figured it out. That's not the purpose of Section 6C of the Act. May 1st, he did fill out an accident report. He did give notice that he related his condition to work. I don't think a prejudice inquiry is relevant here. Your decision in the White case makes that clear. But there was a difference between defective notice and no notice. Yes, that's the distinction I'm making here and I don't think notice of an injury as you talked about in the White decision equates to statutory notices required by Section 6C. There's no evidence in this case that he gave them notice of an industrial injury prior to May 1st, 2007 when he got done. He didn't specifically say he had an industrial accident. What should the claimant have done? He should have said I have carpal tunnel syndrome, I'm going for an EMG, I believe my condition is related to work. He did not do that until May 1st, which is actually 54 days after the date of accident. Nine days more than the statute allows. So our position, Your Honors, is that the decision of the Commission that notice of an industrial injury was given on March 8th is against the manifesto weight of the evidence. We'd ask you to reverse the Commission, find that notice was not given until May 1st, 2007, 54 days after the date of accident and that he failed to meet the jurisdictional notice requirement of Section 6C. Thank you. Thank you, Counselor. Counselor, please. May it please the Court. My name is Bill LaMarca. I'm here on behalf of Mr. Gwartney. Mr. Spiegel has limited the appeal to the issue of notice and so I'll focus on that this afternoon. Of course the standard of review is whether or not the decision is supported by the manifest weight of the evidence and we took it upon ourselves in our brief to quote extensively from the transcript for the purpose of giving the Court a feel for the claimant's testimony regarding the circumstances surrounding his visits with his family doctor, Dr. Rosario, as well as Dr. Lutz. I apologize for the lengthy quote in the brief, but I was trying to demonstrate Mr. Gwartney's attempts at trying to let his supervisors know what his doctors had been telling him about the symptoms he had developed in his hands and arms. Again on cross-examination we quote, and specifically Mr. Spiegel asks about whether he told his supervisors if he was going to do a cross-examination. In his words Mr. Gwartney in all honesty said no. However, again I think the spirit of Section 6C is saying we don't need formal notice. We need to look at all of the circumstances surrounding the issue of notice in this case and if you look at one of the questions on cross-examination I think is somewhat telling, again in the brief he says something about the vibration of the steering wheel causing or affecting the condition of his hands. And Mr. Spiegel asked him when he had that conversation. Now Mr. Gwartney's response was not clear as a bell. In fact it's a little inconsistent in itself where he talks about the report and we think that he meant the report dated May 1st because Mr. Spiegel did a report that he filed with Dr. Rosario which would have been when he first saw Dr. Rosario in February of 07. So I think what he is suggesting is that he had told his supervisors that one of his work activities and in particular driving the truck was affecting the condition of his hands. Now opposing counsel cites the right decision by this panel which provides some ostensible support for his position. So how do you distinguish this case from the White decision? Your Honor, I think in the White decision there was a two year gap between the last day of work which is when I think the claimant in White used what the claimant in White used as the date of accident and the filing of the application for adjustment of claim which was I believe the first time notice was ever given. So it's a significant time departure from the 45 day requirement as provided in section 6C. Well look at the facts of White. It appeared the company knew that White was injured before the date in question but the record did not show appraisal of quote unquote industrial injuries. So is it as simple as you suggested? Well it probably would not be because as you point out there would be the issue of whether he used the magic word industrial or work related and in that sense there was, I guess the difference would be in this case the conversation with Mr. Gordney's supervisors at the time he was being examined by the doctors. And I think in White the first time he was advised that his condition was work related was at the time he filed the application for adjustment of claim. So we've actually in our case had in our brief your Honor had cited a case that we believe is supportive of the Commission's decision and that is the Gano Electric contracting case versus Industrial Commission. And again the appellate court addressed the same issue of proper notice of the claim. In that case I think they recognized the spirit of Section 6C of the Act that an inaccurate or defective notice is not going to kill or defeat a claim unless there's evidence of undue prejudice on the part of the respondent. There was no evidence of undue prejudice in this case your Honor. They knew he was seeing the doctors. He had testified to complaints of problems while operating the truck and the vibration of the steering wheel at the same time he was giving his supervisors these notes referring him from his family doctor to the specialist and then for an EMG. We had originally used a different date of accident. We had used March 23rd, I'm sorry March 29th and truthfully that would have put him within the 45 day time frame of the formal notice. But I think based on his testimony he actually would have known that this condition was probably related to his work activities when he saw Dr. Lutz on March 8th and that is why we amended the application at the time of hearing. Again we do not see any evidence of claimant that during the course of seeing Dr. Rosario and Dr. Lutz that he had discussed the condition of his hands, did not use the magic language and I think it's work related. But when you take into account his testimony about the effect of his work activities on the condition of his hands I think it would have been reasonable for his employer to conclude that those complaints and the findings of the doctors would be related to his work activities. Well whose burden is it? Is the employer supposed to divine or is it the claimant who is supposed to make it clear that there's a connection between the condition and the work injuries? I mean in your scenario how far would you take it? Is the employer supposed to extrapolate? Do they have an obligation to extrapolate with the claimant? I think they have an obligation to look at more than just one fact in the total picture of the notice issue, Your Honor. I think that they can't just say, well all they gave us was a referral slip. Of course the supervisors were not called to testify so we don't know what they would have said. But I think they have to do more than just take an off work slip to decide. That could have been caused by something at home. It does not, Your Honor. And I think in his testimony, which we quoted in our brief at length, he does say, well this is the only thing I do is my work. So I think again he was suggesting that in the course of discussing this with his supervisor he may not have used the words this is work related. But I think again the supervisors would have been able to conclude that based on his complaints of the activities of driving the truck and its effect on his hands plus the conclusions of the doctors that they were given notice and could have acted on those conversations by scheduling an IME by doing something. Ultimately they did request that he fill out an accident report on May 31st. We don't know when they asked him to complete that, but I think it would suggest that there was some discussion perhaps or at least a decision that they needed to have Mr. Glartney fill out a formal accident report. We think that the totality of the circumstances does support the Commission's finding that there was sufficient notice and that we do believe the Commission's decision is supported by the evidence and would ask that it be affirmed. Thank you. Very briefly Your Honors. First I think Gano is distinguishable from this situation and Gano the claimant testified that he reported it to his foreman, told him that he thought it was work related and the foreman in that case said he could have, I don't recall one way or the other. So I think that's a big difference between what happened to Gano and what happened here. I also don't, I do not believe that the prejudice inquiry issue we've talked about is even appropriate here. The final point that I'd like to raise is that these discussions that the claimant had allegedly with Dr. Rosario were not, you can't equate that with reporting an accident to the employer. Dr. Rosario is not the employer. He saw Dr. Rosario February 28th of 2007 again before the date of accident. Is there any explanation in the record as to why he would hand this document from the doctor to his employer? There is no explanation at all. By either side? Either side. Thank you. Thank you.